UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Tellson Partners LLC, Caroline D. Draft, Howard Draft IRA, Howard C. Draft, and Louis R. Malikow,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**Keith Daubenspeck, Peter McDonnell, Kleiner Perkins Caulfield & Byers, Ray Lane, John Doerr, Henrik Fisker, Bernhard Koehler, and Joe DaMour,**<br><br>*Defendants.* | Case No. 1:18-cv-06146<br><br>Hon. Rebecca R. Pallmeyer |

## MEMORANDUM OF LAW IN SUPPORT OF THE KLEINER PERKINS DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

### I.     INTRODUCTION

Plaintiffs' action is an impermissible end-run around this Court's dismissal with prejudice of the ***same claims*** on statute of limitations grounds, brought by the ***same plaintiffs' counsel*** on behalf of a putative class ***including these Plaintiffs*** against the ***same defendants***,[1] all arising out of the collapse of the "green" vehicle startup Fisker Automotive Holdings, Inc. ("Fisker"). Plaintiffs were shareholders in Fisker that lost their investment when the company filed for bankruptcy in 2013, and now seek to recoup their losses from Defendants by alleging they made misleading statements in connection with the sale of Fisker securities to Plaintiffs. Plaintiffs' claims, however, are barred by the three-year statute of limitations set forth in the Illinois Securities Law (the "ISL").

---

[1] This action also names three additional defendants not named in the original action.

Plaintiffs and their counsel know this well. Plaintiffs' counsel previously brought suit against Defendants on behalf of a putative class of Fisker shareholders (which by definition included Plaintiffs) asserting the same claims as this action. *See Orgone Capital III, LLC v. Daubenspeck*, No. 1:16-cv-10849 (N.D. Ill.). *Orgone* was dismissed with prejudice by this Court, which *twice* held that the ISL bars any claims arising out of the purchase of Fisker securities filed more than three years after Fisker shareholders obtained inquiry notice of their claims in mid-2013. *See Orgone*, 2017 WL 3087730, at *9 (N.D. Ill. July 20, 2017) ("*Orgone* Order I"); *Orgone*, 2018 WL 1378182, at *6–7 (N.D. Ill. Mar. 19, 2018) ("*Orgone* Order II"). Because the putative class of Fisker shareholders were on inquiry notice of their claims after a "highly visible" report and "congressional hearings [] put the world on notice of the Defendants' allegedly fraudulent activities and Fisker's imminent collapse" in mid-2013, the *Orgone* action, brought in October 2016, was dismissed as untimely. *See id.* at *8.

Given that the ISL barred the 2016 *Orgone* action, it clearly bars this action as well, as it was brought nearly two years *after* that case. Nonetheless, after *Orgone* was dismissed, Plaintiffs and their counsel filed this action in Illinois state court (along with two other nearly identical individual shareholder actions brought by Plaintiffs' counsel). But the ISL precludes this action because the statute of limitations expired in 2016. Because Plaintiffs' claims are time-barred, this action, like the *Orgone* lawsuit it parrots, must be dismissed with prejudice.

## II. BACKGROUND

The Court is obviously familiar with the facts of this matter, which are substantively identical to the facts of *Orgone*. They are repeated here only for the sake of completeness.

### A. Kleiner Perkins Invests In Fisker

Kleiner Perkins Caufield & Byers ("Kleiner Perkins"), located in Menlo Park, California, is

one of the nation's preeminent venture capital firms. Compl. ¶ 26. In 2008, it invested in Fisker, a start-up company attempting to build a new hybrid automobile. *Id.* ¶¶ 48–49. Ray Lane is a Kleiner Perkins partner (now partner *emeritus)* who joined the Fisker Board of Directors as an outside director in 2008 and served as chairman of its board until May 2013. *Id.* ¶¶ 31, 49, 197. John Doerr is a Kleiner Perkins partner, but did not serve as a Fisker director. *Id.* ¶ 32.

Kleiner Perkins was the largest single investor in Fisker, investing in Fisker offerings alongside Plaintiffs through 2012, and ultimately losing tens of millions of dollars. Compl. ¶¶ 49, 53, 68, 78, 88, 120, 158, 231. Lane and Doerr also each lost millions of dollars of personal money they invested in Fisker. *Id.* ¶¶ 32, 88, 271.

B. **Plaintiffs—Fully Aware Of The Business Risks—Invest In Fisker**

While Fisker raised the majority of its funding from Kleiner Perkins and other venture capital firms, it also sought additional private equity from high net worth, risk-tolerant entities and individuals like Plaintiffs. Compl. ¶ 16. Between August 2009 and September 2012, Fisker held multiple rounds of private offerings. *Id.* ¶¶ 36, 69, 75, 88, 95, 114, 120, 127, 136, 156, 183, 186. Fisker, like its rival Tesla Motors, also received early debt financing through the Department of Energy's ("DOE") Advanced Technology Vehicles Manufacturing ("ATVM") Loan Program. *Id.* ¶¶ 2, 53, 84, 143. In April 2010, the DOE authorized an ATVM Loan of up to $528.7 million to Fisker. *Id.* ¶¶ 2, 84.

By fall of 2011, however, Fisker had begun to experience some well-publicized setbacks. On October 20, 2011, the DOE issued a press release acknowledging that the Company's production schedule had been "delayed by regulatory issues that were outside of its control." Compl. ¶ 143. Then, in November 2011, the media reported that "production delays"— caused by faulty electrical harnesses and headlights, and a flood that damaged the vehicle's

3

interior leather—"sharply reduced" Fisker's projected deliveries. *Id.* ¶ 150. In November and December 2011, Fisker sought additional capital from investors to improve its "cash position" because the Company "did not realize revenue as expected in 2011." *Id.* ¶¶ 139, 158. In February 2012, the Company announced that Henrik Fisker, the Company's cofounder, was resigning as CEO. *Id.* ¶ 181. Between February and June 2012, the Company laid off workers at both its Delaware plant and California headquarters. *Id.* ¶¶ 172, 184. And, in April 2013, Fisker laid off 75% of its remaining workforce. *Id.* ¶ 195.

### C. The Purported Misrepresentations And Omissions Are Revealed In April 2013

On April 17, 2013, PrivCo, a private research firm, published a report entitled "Fisker Automotive's Road to Ruin: How a Billion-Dollar Startup Became a Billion-Dollar Disaster" (the "PrivCo Report"), which it claimed was based on internal DOE documents "obtained through multiple Freedom of Information Act requests." *Orgone* Order II at *2 (internal quotations omitted); *see also* Declaration of Michael Celio in Support of Motion to Dismiss, attached as Ex. 1 ("Celio Decl."), Ex. A (April 18, 2013 Bloomberg article); *id.* Ex. B ¶¶ 87, 97, 119 (*Atlas Capital* Complaint). One week later, on April 24, 2013, Congress held a highly-publicized hearing in which DOE and Fisker officials testified regarding Fisker's troubles (the "House Fisker Hearing"). *Orgone* Order II at *2; Celio Decl. Ex. C (April 24, 2013 Reuters article); *id.* Ex. D (April 24, 2013 Washington Post article). A few months later, on September 17, 2013, the District Court for the Southern District of New York unsealed a *qui tam* complaint filed against Fisker by its former Chief Financial Officer, Eric Weidner, in which Weidner alleged Fisker made certain misrepresentations to the DOE.

4

*Orgone* Order II at *2.[2]

D. **Plaintiffs' Counsel Files The Delaware Action**

On November 22, 2013, Fisker filed for bankruptcy. Compl. ¶ 199. Beginning in December 2013, a group of Fisker investors, represented by the same counsel as plaintiffs in *Orgone* and Plaintiffs in this case, filed three separate lawsuits in the United States District Court for the District of Delaware against seven of the Defendants here—Keith Daubenspeck, Peter McDonnell, Henrik Fisker, Bernard Koehler, Joe DaMour, Kleiner Perkins, and Lane (among others)—alleging claims for securities fraud under the Securities Act of 1933 and the Securities Exchange Act of 1934. Those individual actions were consolidated as *In re Fisker Automotive Holdings, Inc. Shareholder Litigation*, Case No. 13-cv-2100-SLR (D. Del.) (the "Delaware Action"). Plaintiffs in the Delaware Action have stated that the claims in the *Orgone* case (on which the instant action is based) are "predominantly based on the same facts and evidence" and "involve largely the same common assertion" as the claims in the Delaware Action. Delaware Action, Dkt. 233 at 4–5 (Celio Decl. Ex. E).

E. **This Court Dismisses *Orgone***

On October 14, 2016, additional investors in Fisker, also represented by Plaintiffs'

---

[2] The PrivCo Report, as a "document in the public domain," may be judicially noticed. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649 (7th Cir. 2011); *see also Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (same). Likewise, "the Court may take judicial notice of the existence of congressional hearings and reports." *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 84 F. Supp. 3d 705, 725 (N.D. Ill. 2015), aff'd, 840 F.3d 932 (7th Cir. 2016). Additionally, the Court may "take judicial notice of the fact that the [news] articles were published . . . , solely for the purpose of determining whether the articles would have given a reader reason to make further inquiry into defendants' liability for [securities] violations." *See In re Copper Mkt.*, 2003 WL 22495750, at *2 (W.D. Wis. Aug. 20, 2003) (collecting cases doing same); *see also U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365 (7th Cir. 2016) (taking judicial notice of news articles and collecting cases doing same). The Court may also "take judicial notice of public records, including public court documents" – like the *Atlas Capital* complaint – in ruling on a motion to dismiss under Rule 12(b)(6)." *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016).

5

counsel, filed *Orgone*. *Orgone* was a putative class action brought on behalf of Fisker shareholders, including Plaintiffs, asserting the same claims as this action. *Orgone*, Dkt. 1-1 (Celio Decl. Ex. F). In their complaint, the *Orgone* plaintiffs forthrightly conceded that the information underlying their claims was disclosed to the public in April 2013. Specifically, the plaintiffs alleged that the PrivCo Report was published on April 17, 2013. *Orgone* Order II at *2. Plaintiffs further "base[d] the allegations" of their complaint upon "the testimony and documents made public in the hearing held by the Subcommittee on Economic Growth, Job Creation and Regulatory Affairs of the Committee on Oversight and Government Reform, U.S. House of Representatives, on April 24, 2013, to investigate Fisker Automotive's travails." *Orgone*, Dkt. 1-1 at p. 1. Additionally, the plaintiffs referenced the *qui tam* complaint filed against Fisker by its former CFO, Weidner. *Id.* ¶¶ 5, 60, 69–70, 180. The Plaintiffs "explain[ed] in the[ir] complaint that these well-publicized incidents 'revealed fraud and breach of fiduciary duties.'" *Orgone* Order I at *9 (quoting *Orgone* Compl. ¶ 4).

On July 20, 2017, this Court ruled that all of the *Orgone* "[p]laintiffs' claims [we]re barred by the ISL [three-year] statute of limitations." *Orgone* Order I at *4. The ISL's three-year statute of limitations governed the plaintiffs' claims, this Court explained, because it "applies not only to claims brought under the ISL, but also to 'any of the matters for which relief is granted'" by the ISL. *Id.* at *8 (quoting 815 Ill. Comp. Stat. 5/13(D)). This Court rejected the plaintiffs' argument that, because they allegedly purchased Fisker securities via contracts containing *Delaware* choice-of-law clauses, they were precluded from asserting a claim under the ISL and therefore could avail themselves of a different, five-year limitations period under *Illinois* law. *Id.* at *8. Noting Plaintiffs' "conjectural, procedurally inverted" argument, the Court found that "Plaintiffs were not barred from bringing a timely ISL claim, and, therefore, the

6

ISL statute of limitations applies." *Id.*

Having found that the ISL's statute of limitations applies, this Court concluded that the *Orgone* plaintiffs' claims were untimely. Their "straightforward factual disclosures" concerning the PrivCo Report, the congressional hearings, and the *qui tam* complaint established that the "[p]laintiffs had knowledge of their claims in April 2013, or at least some time before October 14, 2013 (three years before filing th[eir] case)." *Id.* at *9. Although the plaintiffs did "not expressly admit" they had knowledge of these events, "they explain[ed] in the[ir] complaint that these well-publicized incidents 'revealed fraud and breach of fiduciary duties.'" *Id.* This Court held it is "implausible" that these disclosures "did not put the Plaintiffs on notice that Fisker investors had been seriously misled." *Id.* The Court, however, granted the plaintiffs leave to amend. *Id.* at *10. The Court also dismissed the plaintiffs' claims against Doerr, a California domiciliary, because plaintiffs failed to establish the court's personal jurisdiction over him in Illinois. *Id.* at *4–7.

In response to this Court's order, the *Orgone* plaintiffs amended their complaint in two primary ways. First, they alleged that Delaware choice-of-law provisions contained in their securities purchase agreements applied to each of their claims. Second, they removed all references to the events this Court found put the plaintiffs on notice of their claims, and alleged in conclusory language that they first learned of the conduct upon which their claims were based at a later date. Neither of these changes—both of which Plaintiffs carry forward in their Complaint—saved the *Orgone* claims from dismissal.

Regarding the Delaware choice-of-law provisions, this Court found that "[i]t does not . . . matter[] whether the [p]laintiffs advanced under Delaware common law or Illinois common law for the purposes of applying the [ISL three-year] statute of limitation." *Orgone* Order II at *4.

7

The "applicability of the choice-of-law clauses" was "irrelevant" because, "[u]nder the plain language of the statute, the ISL's statute of limitations does not apply solely to actions seeking relief under the ISL: it applies to 'any of the matters for which relief is granted by this Section[.]'" *Id.* (quoting 815 ILCS 5/13(D)). "Even assuming that Delaware common law [did] apply . . . , the ISL's three-year statute of limitations still controls." *Id*. at *4–5.

This Court next turned to the question of whether plaintiffs' suit was timely. The Court held that plaintiffs' deletion of references to the PrivCo Report, congressional hearings, and *qui tam* complaint from their amended complaint did not change the fact that these events put Fisker investors on inquiry notice of their claims. "It [was] simply not possible that the Plaintiffs would not have had 'notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation' by at least the end of April 2013, from the same highly visible PrivCo Report and congressional hearings that put the world on notice of the Defendants' allegedly fraudulent activities and Fisker's imminent collapse." *Id.* at *6. Indeed, the argument that the plaintiffs could be unaware of the hearings in the U.S. House of Representatives addressing Fisker's financial problems "stretches even the most generous definition of 'willful blindness' to its breaking point." *Id.* Because the plaintiffs had objective inquiry notice of the events upon which their claims were based more than three years before they filed suit, the Court dismissed their claims with prejudice. Plaintiffs have appealed that ruling to the Seventh Circuit, alleging among other things that this Court erred and made impermissible "findings of fact;" the appeal is currently pending. *Orgone Capital III, LLC v. Daubenspeck*, No. 18-1815 (7th Cir.).

### F. Plaintiffs File The Instant Action Despite The Court's Ruling

After the Court dismissed *Orgone*, Plaintiffs (members of the putative class in *Orgone*) filed this action. This case is identical in virtually all respects to *Orgone.* Plaintiffs' allegations,

like those of the *Orgone* plaintiffs, center on a series of allegedly false and/or misleading statements by Defendants in connection with the sale of Fisker securities. Compl. ¶ 1. Indeed, Plaintiffs bring the *same* six common law causes of action against the *same* defendants: negligent misrepresentation, fraud, fraudulent concealment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy. Compl. at pp. 82–108. This action was timely removed from state court on September 7, 2018. Dkt. 1. Defendants Kleiner Perkins, Ray Lane, and John Doerr (the "KP Defendants") now move to dismiss and for judgment on the pleadings because this action is untimely and the court lacks personal jurisdiction over the KP Defendants.

### III. ARGUMENT

This case should be dismissed for the same reasons that the *Orgone* case was dismissed, namely that the statute of limitations has expired. Moreover, leave to amend should be denied as there are no set of facts that could be pleaded that would cure the obvious deficiencies.

### A. Plaintiffs' Claims Are Barred By The ISL's Three-Year Statute Of Limitations And Should Be Dismissed With Prejudice

A motion seeking to dispose of a complaint on statute of limitations grounds is "treated as a motion for judgment on the pleadings under Rule 12(c)." *Orgone* Order I at *9 (citing *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012) and *Johnson v. City of S. Bend*, 680 F. App'x 475, 478 (7th Cir. 2017)). "To survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face." *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir. 2016) (internal quotation marks and citation omitted). However, a complaint should be dismissed at the pleading stage where "undisputable facts within [the court's] judicial-notice power" and "the allegations in the complaint" demonstrate that it is time-barred. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

### 1. Plaintiffs' Claims Are Subject To The ISL's Statute Of Limitations

The ISL's three-year statute of limitations governs this action. The ISL provides "a private right of action against defendants who mislead investors in the sale of securities." *Orgone* Order I at *8 (citing 815 ILCS § 5/12(I)). As this Court held in granting the KP Defendants' motion to dismiss *precisely the same claims advanced here*, "[t]he ISL's three-year statute of limitations applies not only to claims brought under the ISL, but also to 'any of the matters for which relief is granted by this Section[.]'" *Id.* at *8; *Orgone* Order II at *4. Thus, the ISL limitations period applies to common law causes of action seeking redress for allegedly misleading statements made in connection with the sale of securities. *See id.*; *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007) (fraud and breach of fiduciary duty claims fall under the ISL); *Tregenza v. Lehman Bros., Inc.*, 678 N.E. 2d 14, 15 (Ill. App. Ct. 1997) (fraud, fiduciary duty, and negligent misrepresentation claims subject to ISL). Because Plaintiffs' common law claims are premised on "matters for which relief is granted by" the ISL, *see, e.g.*, Compl. ¶¶ 1, 11, 202, 221, 241, 263, 268, 279, the ISL three-year statute of limitations applies here. *See Orgone* Order I at *8–9; *Orgone* Order II at *4–5.

Just as in the *Orgone* case, Plaintiffs attempt to escape the ISL's limitations period by invoking Delaware choice-of-law provisions in certain contracts relating to their purchase of Fisker securities. *See* Compl. ¶¶ 40–43, 201, 220, 240, 250, 266, 274. These allegations regarding Delaware choice-of-law provisions are a red herring. Putting aside whether the parties are even bound by the Delaware choice-of-law clauses in the various investment agreements, it is irrelevant "whether the Plaintiffs advance[] under Delaware common law or Illinois common law for the purposes of applying the Illinois Securities Law's statute of limitation." *Orgone* Order II at *4. "Even assuming that Delaware common law does apply in

this case, the ISL's three-year statute of limitations still controls." *Id.*; *see also Ennenga*, 677 F.3d at 774–75 ("even when the substantive law of a nonforum state applies, Illinois courts apply the Illinois statute of limitations 'because statutes of limitations are procedural, fixing the time in which the remedy for a wrong may be sought rather than altering substantive rights'") (quoting *Freeman v. Williamson,* 890 N.E. 2d 1127, 1133 (Ill. App. Ct. 2008)). As discussed *supra*, because Plaintiffs' claims seek to hold Defendants liable for alleged actions within the purview of the ISL, the ISL statute of limitations applies regardless of the substantive law governing Plaintiffs' claims. *See Tregenza*, 678 N.E.2d at 15; *Klein*, 500 F.3d at 671 ("claims that do not directly invoke the [ISL] may still fall within its statute of limitations"); *First Nat'l Bank & Tr. Co. v. McGraw-Hill Cos., Inc.*, 85 F. Supp. 3d 963, 967 (N.D. Ill. 2015) (same); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1176 (C.D. Cal. 2011) (ISL limitations period applied even though claims allegedly governed by New York law). Plaintiffs' attempt to side-step the ISL's three-year limitations period fails.

### 2. Plaintiffs' Three-Year Limitation Period Has Expired

Because Plaintiffs' claims are governed by the ISL's three-year statute of limitations, the only question is whether Plaintiffs had actual or inquiry notice of the basis of their claims on or before July 6, 2015—three years before they filed this suit. 815 Ill. Comp. Stat. 5/13(D). The answer is unquestionably "yes."

The ISL's limitations period is triggered upon the earlier of: (1) the date the plaintiff has actual knowledge of the alleged violation, or (2) the date upon which the plaintiff "has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation." 815 Ill. Comp. Stat. 5/13(D). Thus, even if a plaintiff lacks actual knowledge of the facts underlying his or her claim, the ISL statute of limitations will still begin to run if and "when

the plaintiff has 'inquiry notice' of the conduct giving rise to the claim." *Grumhaus v. Comerica Sec., Inc.*, No. 99 C 1776, 2003 WL 21504185, at *2 (N.D. Ill. June 30, 2003); *see also Ferguson v. Roberts*, 11 F.3d 696, 704 (7th Cir. 1993) ("the [ISL] statutory period begins to run when the plaintiff knows or should know that the securities laws have been violated"); *Stone v. Chicago Inv. Grp., LLC*, No. 11 C 51, 2011 WL 6841817, at *3 (N.D. Ill. Dec. 29, 2011). Inquiry notice under the ISL is "'an objective test: not whether plaintiffs actually knew of the conduct but whether they *reasonably should have known*.'" *Orgone* Order II at *7 (quoting *Grumhaus*, 2003 WL 21504185, at *2) (emphasis added).

Plaintiffs were on inquiry notice of their claims in 2013—more than three years before they filed this case. As this Court ruled in *Orgone*, beginning in April 2013, "a series of events made Fisker's woes public." *Orgone* Order I at *1. These events included (1) an April 17, 2013 report by PrivCo, a private market research firm, "expos[ing] Fisker's catastrophic financial situation"; (2) Congressional hearings, the first of which was held in April 2013, that investigated Fisker's use of DOE loan funds; and (3) the unsealing in September 2013 of a *qui tam* complaint brought against Fisker by its former Chief Financial Officer. *Id.* at *1, *9-10. These events received significant public attention, including through articles in major news publications such as *Bloomberg*, *The Washington Post*, and *Reuters*. *See* Celio Decl. Exs. A, C, & D. Indeed, this same Plaintiffs' counsel filed a federal securities action in *December 2013* – nearly five years before this action was filed – on behalf of yet another Fisker investor premised in part on documents "*made public* in PrivCo's April 17, 2013 report on Fisker Automotive's demise." *Id.* Ex. B, ¶¶ 97, 119 (emphasis added). Accordingly, based on "the same highly visible PrivCo Report and congressional hearings that put the world on notice of the Defendants' allegedly fraudulent activities and Fisker's imminent collapse," the Court held that the *Orgone*

12

plaintiffs were on notice of their claims such that the ISL statute of limitations began to run in 2013. *Orgone* Order II at *6.

The same is true of Plaintiffs here. Just like the plaintiffs in *Orgone*, Plaintiffs are "sophisticated investors" that were able to invest in a private company alongside venture capital firms like Kleiner Perkins. *See id.* at *6. As such, Plaintiffs "reasonably should have known" about these "highly visible" events. *See id.* at *6, 7. Indeed, the Seventh Circuit has held that a "reasonable investor is presumed to have information available in the public domain," which gives investors "constructive knowledge of this information." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995); *see also Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1169 (7th Cir. 1995) (discussing "constructive notice to ordinary investors" based on information in the public domain). Moreover, as multiple Courts of Appeals have held, plaintiffs are put on inquiry notice when congressional hearings "explore[] some of the same violations complained of" in the complaint. *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *Marino v. Countrywide Fin. Corp.*, 602 F. App'x 403, 405 (9th Cir. 2015). Additionally, Plaintiffs would have been put on inquiry notice of their claims when one of their fellow Fisker investors, Atlas Capital, filed a securities fraud suit in December 2013 based on substantially similar allegations, and against most of the same defendants, as this suit. Celio Decl. Ex. B. That action itself is sufficient to place this case outside the statute of limitations. There can be no doubt that the PrivCo Report, the congressional hearings on Fisker, Fisker's CFO's complaint, the Atlas Capital litigation, Fisker's bankruptcy itself, and the press on the foregoing—all of which occurred in 2013—triggered the ISL's statute of limitations, which "is objective in nature, and not concerned with [Plaintiffs'] actual knowledge of the specific facts that establish [their] cause[s] of action." *Orgone* Order II at *7. Because Plaintiffs

13

brought this suit more than five years after receiving inquiry notice of their claims, and well after the ISL's limitations period expired, this case must be dismissed with prejudice.

### B. The Court Should Dismiss the KP Defendants From This Action for Lack of Personal Jurisdiction

Although the Court need not reach this question given that all of Plaintiffs' claims are time barred, the Court should dismiss John Doerr from this action for the additional reason that he is not subject to this Court's jurisdiction.[3]  Courts may not exercise personal jurisdiction over a non-resident defendant unless the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).  Plaintiffs here do not allege that Doerr, a California domiciliary, ever set foot in Illinois.  Nor can Plaintiffs' conclusory allegations about Doerr's association with non-party Advanced Equities Inc. ("AEI") establish minimum contacts with the state.

Ruling on nearly identical allegations, this Court dismissed Doerr from the *Orgone* action for lack of personal jurisdiction. *See Orgone* Order I at *4–5.  As in *Orgone*, Plaintiffs' only jurisdictional allegations relating to Doerr are that he, along with Ray Lane, "controlled the decision to retain . . . Illinois-based AEI and Daubenspeck[] to market Fisker Automotive Securities to Illinois residents (and others)," and "to give the KP Defendants the power to control Fisker Automotive and perpetrate the misconduct emanating from Illinois."  Compl. ¶ 12.  But as

---

[3]  The Court should also dismiss Kleiner Perkins and Lane from this action because the Court lacks personal jurisdiction over them.  While this Court decided in *Orgone* that it had personal jurisdiction over Kleiner Perkins and Lane, the KP Defendants respectfully disagree and request that the Court hold that it lacks jurisdiction over all of the KP Defendants for all of the reasons set forth in the Memorandum of Law in Support of the Kleiner Perkins Defendants' Motion to Dismiss the *Orgone* complaint.  *See* Celio Decl. Ex. G at 9–13.

the Court previously held, "[m]erely entering into a contract with a party in the forum is not alone a sufficient contact for jurisdiction . . . , nor is entering into a conspiracy with a state resident." *Orgone* Order I at *5. "[E]ven where the downstream effect of a defendant's actions within a state are significant, the courts of that state do not have personal jurisdiction unless the defendant *purposefully directs his or her activity towards the state's residents*." *Id.* (emphasis added). Plaintiffs do not (and cannot) allege that Doerr targeted Illinois residents *specifically*, much less that Doerr made a "purposeful or knowing effort to reach Illinois residents in particular." *Id.* at *6 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Moreover, that Plaintiffs allege that AEI and/or its agents may have made false and misleading statements to Plaintiffs is of no moment, as "the unilateral activity of parties other than the non-resident defendant cannot satisfy the requirement of the defendant's contacts with the forum state." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) (internal quotation marks and citation omitted). Under these circumstances, "due process protects [Doerr] from being haled into court in the state." *See Orgone* Order I at *6 (citing *Burger King*, 471 U.S. at 472). Plaintiffs' claims against Doerr must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the KP Defendants' Motion to Dismiss and for Judgment on the Pleadings should be granted. Because no amendment can cure the untimeliness of Plaintiffs' Complaint, the Court should dismiss the complaint just as it ultimately did in *Orgone*: "in its entirety, with prejudice." *See First Nat'l Bank,* 85 F. Supp. 3d at 965.

DATED: September 14, 2018.  Respectfully submitted,

**LOEB & LOEB LLP**

By: */s/ Joseph J. Duffy*
Joseph J. Duffy

15

Corey B. Rubenstein
Nina Ruvinsky
321 North Clark Street
Suite 2300
Chicago, IL 60654
(312) 464-3100
jduffy@loeb.com
crubenstein@loeb.com
nruvinsky@loeb.com

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Michael D. Celio*
Michael D. Celio (*pro hac vice* pending)
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5300

Michael J. Kahn (*pro hac vice* pending)
Courtney C. Aasen (*pro hac vice* pending)
Sheli R. Chabon (*pro hac vice* pending)
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
mjkahn@gibsondunn.com
caasen@gibsondunn.com
schabon@gibsondunn.com

*Attorneys for Defendants Kleiner Perkins Caulfield & Byers, Ray Lane, and John Doerr*

# CERTIFICATE OF SERVICE

      I, Joseph J. Duffy, an attorney, certify that, on September 14, 2018, I caused a copy of the foregoing to be filed with the Clerk of the Court and served on all counsel of record via the Court's Case Management/Electronic Case Filing system and also served via electronic mail, with consent, on *pro se* Defendant Peter Sean McDonnell at petermcdonnell555@yahoo.com.

By: */s/ Joseph J. Duffy*

Joseph J. Duffy
Corey B. Rubenstein
Nina Ruvinsky
LOEB & LOEB LLP
321 North Clark Street
Suite 2300
Chicago, Illinois 60654
(312) 464-3100
jduffy@loeb.com
crubenstein@loeb.com
nruvinsky@loeb.com

Michael D. Celio
GIBSON, DUNN AND CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: (650) 849-5300
mcelio@gibsondunn.com

Michael J. Kahn
Courtney C. Aasen
Sheli R. Chabon
GIBSON, DUNN AND CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
mjkahn@gibsondunn.com
caasen@gibsondunn.com
schabon@gibsondunn.com